U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
JAN 20 2006
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DALTON WHITE,  CIVIL ACTION
    Appellant  NO. CV05-0013-A

VERSUS

JO ANNE B. BARNHART,  JUDGE F. A. LITTLE, JR.
COMMISSIONER OF SOCIAL SECURITY,  MAGISTRATE JUDGE JAMES D. KIRK
    Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Dalton White ("White") filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging a disability onset date of February 5, 2002 (Tr. pp. 53, 192), due to a broken hip, crushed knee, broken right leg, plates in his knee and hip, two back surgeries, and spurs on his spine (Tr. p. 59). Those applications were denied by the Social Security Administration ("SSA") (Tr. pp. 24, 194).

A de novo hearing was held before an Administrative Law Judge ("ALJ") on April 16, 2003, at which White appeared with his attorney and a vocational expert (Tr. p. 202). The ALJ found that, although White suffers from "severe" "cervical, knee and hip problems," he can perform a limited range of sedentary work and has the residual functional capacity to perform such sedentary jobs as information clerk and surveillance system monitor and, therefore, White was not under a disability at any time through the date of his decision on August 26, 2003 (Tr. pp. 20-21).

White requested a review of the ALJ's decision, but the

Appeals Council declined to review it (Tr. p. 5), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

White next filed this appeal for judicial review of the Commissioner's final decision. White raises the following issues for review on appeal:

>1. The ALJ should have obtained medical expert testimony.
>
>2. The ALJ erred in assessing White's residual functional capacity at Step 4, resulting in an erroneous reliance upon the testimony of the VE given in response to a defective question. Alternatively, the number of jobs suggested by the VE did not constitute a significant number.

The Commissioner responded to White's appeal, and White filed a reply brief. White's appeal is now before the court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must

2

meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the

3

evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

### Issue 1 - Medical Expert and Listings

First, White argues the ALJ should have obtained medical expert testimony. White contends he meets Listing 1.03, "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is

not expected to occur, within 12 months of onset."[1] Alternatively, White contends he meets or equals a listing due to his severe cervical myelopathy resulting from disc disease. White argues it was error for the ALJ not to obtain a medical expert's opinion regarding equivalency to a listing.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990). See also, Selders, 914 F. 2d at 619. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify. Sullivan v. Zebley, 110 S. Ct. at 891.

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed

---

[1] Arthrodesis is the surgical immobilization of a joint so that the bones grow solidly together: artificial ankylosis. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Arthrodesis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

5

impairment." Sullivan, 493 U.S. at 531; Selders, 914 F.2d at 619 (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Sullivan, 493 U.S. at 531.

In the case at bar, the ALJ stated briefly that White did not meet or equal any listing and did not discus Listing 1.03 specifically, even though White's attorney had argued, at the administrative hearing, that White's impairments meet or equal Listing 1.03 (Tr. pp. 204-206).

White was injured in a motor vehicle accident on February 5, 2002 (Tr. p. 101). White suffered a closed fracture of the right patella and a fracture of the right hip (Tr. pp. 115-116, 127-128), both of which were surgically repaired with metal plates (Tr. p. 119). In September 2002, White was examined by Dr. Barry F. Tillman, a pulmonary and internal medicine specialist, who noted White had only 20 degree flexion of his right knee and walked with one crutch (Tr. pp. 138-139). Dr. White diagnosed cervical spine

disease with resulting chronic discomfort and paresthesias,[2] apparent arthritis, decreased use and range of motion of the right knee and a resulting impaired gait, and chronic right hip pain on the basis of trauma and subsequent surgery (Tr. pp. 137-138). Dr. Tillman further stated that White requires crutches for ambulation, his standing and walking should be limited to 5 to 15 minutes, he cannot walk or stand for more than 2 hours collectively in a single day, and his crutch is medically necessary for ambulation, although he can take a few steps without it (Tr. p. 141). In November 2002, White complained of pain in his right knee; his anterior and posterior cruciate ligaments were stable (Tr. p. 180). An MRI of his knee showed mild degenerative arthritis (Tr. p. 184). In February 2003, another MRI showed White had a torn meniscus[3] in his right knee (Tr. pp. 179, 184)

In March 2003, White complained of neck pain radiating into his arms with numbness in the left ulnar digits (Tr. p. 158. An MRI showed severe degenerative changes at C4-C5 and C5-C6), and was

---

[2] Paresthesia is a sensation of pricking, tingling, or creeping on the skin having no objective cause and usually associated with injury or irritation of a sensory nerve or nerve root. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Paresthesia, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[3] A meniscus tear is a tear in the shock-absorbing cartilage (meniscus) of the knee. MEDLINEplus Health Information, Medical Encyclopedia: Meniscus tears, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

diagnosed with cervical myelopathy (Tr. p. 156). It was recommended and planned that White undergo additional surgery on his cervical vertebra to remove bone spurs and decompress his spinal cord (Tr. p. 156). However, that surgery was not performed because White presented himself for surgery in an intoxicated condition (Tr. pp. 154-172), and he apparently did not reschedule the surgery.

White testified at his April 2003 administrative hearing that his hip is a lot better, but his knee is not due to the torn meniscus (Tr. pp. 209, 214).

White admits in his brief that he was able to ambulate without a crutch eleven months after his surgery, but argues he was not able to "ambulate effectively." However, Listing 1.00B(2)(b)(2) states that examples of ineffective ambulation include the inability to walk without the use of *two* crutches or *two* canes.

White further argues he is still not able to ambulate effectively, thus fulfilling the twelve month requirement, because he cannot "walk a block at a reasonable pace on rough or uneven surface," which is another example cited in Listing 1.00B. Other examples also include the inability to use standard public transportation, the inability to carry out routine ambulatory activities (such as shopping and banking), and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. Listing 1.00B(2)(b)(2).

The record shows that, eleven months post-surgery, White was no longer using a crutch to walk. White testified at his April

2003 hearing that he walks to his mother's house for meals, which is 50 to 75 yards away (Tr. p. 210); White further testified that he can walk up to 100 yards, then he has to stop, sit down, and take a break (Tr. pp. 210-211). There is no medical evidence in the record reflecting on White's ability or inability to ambulate 12 months and more post-surgery.

Although White contends the ALJ should have appointed a medical expert to testify as to whether White equals Listing 1.03, White had the burden of proving with medical evidence that he equaled a listing. White has not introduced any medical evidence as to his ability to ambulate. Since White no longer needs to use a cane to help him walk, it seems apparent his ability to ambulate is not impaired to the degree required to meet Listing 1.03. Therefore, White has failed to carry his burden of proving with medical findings that his condition equals Listing 1.03. Also, since there was nothing in White's medical records to indicate his ability to ambulate was impaired to a degree severe enough to possibly meet Listing 1.03, the ALJ did not err in failing to appoint a medical expert.

Finally, White argues the ALJ erred in failing to find his cervical myelopathy meets a listing, and in failing to appoint a medical expert to testify as to that. However, White had not identified a specific listing which he believes his "cervical myelopathy" meets or equals. Moreover, White failed to undergo the surgery recommended for treatment of his cervical myelopathy. A medical condition that can reasonably be remedied either by

surgery, treatment, or medication is not disabling. <u>Lovelace v. Bowen</u>, 813 F.2d 55, 59 (5th Cir. 1987). If a claimant does not follow the prescribed treatment without a good reason, he will not be found disabled. 20 C.F.R. § 404.1530(b) & § 416.930(b).

Therefore, substantial evidence supports the Commissioner's conclusion that White does not meet or equal an Appendix I listing.

<u>Issue 2 - White's Residual Functional Capacity</u>

Next, White contends the ALJ erred in assessing his residual functional capacity at Step 4, resulting in an erroneous reliance upon the testimony of the VE given in response to a defective question. Specifically, White alleges the ALJ erred by including, in the hypothetical question to the VE, a "need to limit feeling with both hands to no more than occasionally." White argues his cervical myelopathy with associated numbness in his arms, hands, and fingers render him completely unable to use his hands for bilateral manual dexterity, which is a significant limitation on the sedentary work base. However, as stated above, White failed to undergo the recommended surgery to treat his cervical myelopathy. Therefore, White will not be found disabled due to problems for which he failed to undergo recommended treatment.

White argues, alternatively, that the number of jobs suggested by the VE did not constitute a significant number. White is referring to the VE's testimony that there are only sixty security surveillance system jobs in Louisiana. The Social Security Act, 42 U.S.C. §423(d)(2)(A), provides that "'work which exists in the national economy' means work which exists in significant numbers

either in the region where such individual lives or in several regions of the country." Section 404.1566(b), of 20 C.F.R., further states:

> "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'"

See Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs is a significant number) and Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs is not an insignificant number).

While sixty jobs may not be a "significant number" in the regional economy, there are 5500 such jobs in the national economy (Tr. p. 224). Therefore, this work exists in significant numbers in the national economy.

Moreover, the VE also testified White could work as an information clerk, of which there are 1500 jobs in the local economy and 112,500 jobs in the national economy (Tr. pp. 223-224). Although White argues that "information clerk" is semi-skilled work (Tr. p. 222) for which he has no transferable skills (Tr. p. 229), White failed to cite any authority to support the proposition that one must have transferable skills in order to perform semi-skilled work. The VE explained that White could perform work as an information clerk because that job requires a worker to answer inquiries from persons in establishments and provide information regarding activities and the location of departments, offices, and employees within an organization, such as a job at a mall directing

11

shoppers to store locations and explaining mall activities, or a job at a hotel (Dictionary of Occupational Titles No. 237.367-022) (Tr. pp. 227-228). White has failed to identify any specific skills which the job of information clerk requires but which White does not have.

Finally, White contends that SSR 82-41 states that "people are not expected to do more complex jobs than they have actually performed." However, the semi-skilled job of information clerk is not "more complex" than White's past skilled work as a farm worker, his past semi-skilled work as a roughneck, or his past semi-skilled work as a commercial fisherman (Tr. p. 221).

Therefore, substantial evidence supports the Commissioner's conclusion that work exists in significant numbers in the regional or national economies which White can perform.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that White's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of January, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE